# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 18-cr-144 (RC/GMH) |
| ABDUL K. SAMUELS, | ) ) ) | |
| Defendant. | ) ) | |

## DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, Abdul K. Samuels, be detained pending trial pursuant to 18 U.S.C. § 3142. Defendant is charged by indictment with one count of unlawful possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1), one count of unlawful possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of using, carrying, and possessing a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). The Court held a detention hearing on May 16, 2018. At the conclusion of that hearing and upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered Defendant held without bond. This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention." 18 U.S.C. § 3142(i)(1).

## FINDINGS OF FACT

At the detention hearing, the United States proceeded by proffer based on the indictment. The defense offered no contrary evidence on the merits of the offense, but did provide, also by proffer, additional information about the history and characteristics of Defendant, specifically

about his ties to the community. Accordingly, the Court makes the following findings of fact.

### A. Evidence Relevant to the Charged Offense

On February 1, 2018, as part of an investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") into narcotics trafficking from a particular premises on Martin Luther King, Jr. Avenue ("MLK Avenue") in the southeast quadrant of the District of Columbia, law enforcement executed a search warrant on that premises, which comprises a barber shop on the first floor and a series of eight rooms, including a kitchen and bathroom, on the second floor. In the barber shop, agents recovered various kinds of drug paraphernalia (baggies, capsules, ziplocs, and a digital scale), a loaded 9mm firearm and assorted ammunition, and a ziploc containing a substance suspected to be heroin. In one of the rooms on the second floor, agents recovered a wallet, identification, credit cards, and mail matter in the name of a person, present at the search, who identified himself as the barbershop manager. That room also contained drug paraphernalia, such as baggies, a razor blade, a straw, and a scale; a vial of PCP; and six rounds of ammunition. Two more loaded firearms, as well as more ammunition, more drug paraphernalia, and more suspected drugs were found in the kitchen. Other rooms contained more drugs—PCP, heroin, and suboxone, some packaged for sale—more paraphernalia, including two more scales, and over $7,000 in cash. Agents also discovered a document directed to one of the targets of the ATF investigation, an individual named Anthony Fields, whose vehicle, which had been searched earlier, had contained the keys to the premises on MLK Avenue.[1]

Also on February 1, 2018, law enforcement executed a search warrant at an address on 46th Street in the southeastern quadrant of the District of Columbia. This search recovered an

---

[1] Mr. Fields was arrested on February 1, 2018, and indicted on February 6, 2018, on various drug trafficking charges. He has been held without bond in *Unites States v. Fields*, Case No. 18-cr-23 (APM), since his arrest.

identification card and miscellaneous documents in the name of Mr. Fields. Agents also found a ledger, consistent with narcotics record keeping, with the notation "Foots" and the number 500 next to it, which law enforcement interpreted as documentation of a $500 narcotics debt owed by "Foots" to Mr. Fields. On March 14, 2018, agents executed a search warrant on nineteen cell phones seized during the February 1 searches. Forensic extraction performed on the devices was able to match the sobriquet "Foots" to a cell phone number, and also discovered several phone calls between "Foots" and Mr. Fields. Using a law enforcement database, agents were able to identify Defendant as "Foots." Agents also obtained Mr. Fields' jail calls (as noted, Mr. Fields has been detained since his arrest in early February), and heard him giving an unidentified female a list of seven phone numbers, one of which was Defendant's. During another call, Mr. Fields instructed a woman to call the number identified with Defendant. When the person at that number joined the three-way call, the woman called him "Foots," and Mr. Fields told "Foots" to tell Mr. Fields' attorney that "Foots" had a key to the barbershop.

Law enforcement then confirmed that Defendant had a driver's license listing an address on Alabama Avenue in the southeastern quadrant of the District of Columbia, and also had a vehicle registered to that address. On April 13, 2018, ATF agents removed two bags of garbage from a bin in the alley behind that premises. From one of them they recovered mail directed to Defendant at that address, as well as part of a plastic bag coated with a white powdery residue consistent with cocaine powder. From the other bag, agents found mail addressed to a woman who, they later discovered also had a vehicle registered to the Alabama Avenue address. That receptacle also contained bag fragments with white, powdery residue. At a later search of trash left behind the residence, law enforcement found more mail in Defendant's name, as well as some

3

unused pink zips, which are commonly used to package narcotics.

On April 26, 2018, officers from the Metropolitan Washington Airport Authority stopped Defendant on the Dulles Airport access road in Virginia on suspicion of driving while intoxicated, commonly referred to as driving under the influence. Officers observed a baggie containing five rocks of crack cocaine, which weighed (with the packaging), approximately eighteen grams. Defendant was arrested for felony possession of a controlled substance.

On May 10, 2018, law enforcement executed a search warrant at the Alabama Avenue address associated with Defendant. The door was not answered when agents knocked and announced that they were law enforcement; when the door was breached, agents detained Defendant, who identified himself. Also present in the residence was the woman who received mail at and had a vehicle registered to the address, who has been identified as Defendant's girlfriend. Upon entering, agents observed in Defendant's hand a plastic bag fragment that was later recovered on the kitchen counter. A white rock-like substance in the baggie field-tested positive for crack and weighed approximately 4.9 grams (with the packaging). From the master bedroom, agents recovered a 12-gauge shotgun, one round of 12-gauge ammunition, and two rounds of .45 caliber ammunition; twenty-two rounds of 12-gauge ammunition were discovered near the front door. Agents also found drug paraphernalia at the residence, including a razor blade, a Pyrex cup with white residue, a spoon, zips, and a digital scale. A rental car that agents had observed Defendant driving was present near the residence. A drug dog alerted upon examination of the vehicle. When searched, the vehicle contained baggies and a digital scale, as well as mail in Defendant's name. After Defendant was advised of his *Miranda* rights, he admitted that the shotgun was his and that he knew he was prohibited from possessing it as a convicted felon.

Defendant denied being a drug dealer, asserting that he was merely a drug user. However, Defendant's drug test upon arrest was positive for opiates and negative for cocaine, which is consistent with the government's theory that, although Defendant may use heroin or other opiates, he deals cocaine base.

### B. Defendant's Criminal History

Defendant has a rather lengthy history of arrests and convictions. In March 1993, he was arrested for possession with intent to distribute PCP/LSD, and pleaded guilty to two possession offenses. He was sentenced in April 1994 to a term of imprisonment of nine months. In November 1993, he was arrested for possession with intent to distribute cocaine; he pleaded guilty to possession and was sentenced in November 1994 to a term of imprisonment of six months. In 1995, Defendant pleaded guilty to assault with a dangerous weapon and was sentenced to a term of imprisonment of forty months to ten years. More recently, on March 23, 2018, Defendant was arrested for leaving the scene of a collision resulting in personal injury. That case is pending in D.C. Superior Court. Finally, on April 26, 2018, Defendant was arrested in Virginia for possession of narcotics—the approximately 18 grams of crack mentioned above. He was on pretrial release in both those recent cases at the time of the search of the Alabama Avenue residence and his arrest on these federal charges.

## LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant]

before trial." 18 U.S.C. § 3142(e). Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f)(2). Where the justification for detention is risk of flight, the decision must be supported by a preponderance of the evidence. *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

Section 3142 imposes a rebuttable presumption of dangerousness or flight risk on certain defendants based on the crimes with which they are charged, their prior convictions, or similar considerations. *See* 18 U.S.C. § 3142(e)(2), (3). For purposes of determining whether a rebuttable presumption is triggered, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Smith,* 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community."). Here, Defendant was indicted under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) for possession with intent to distribute cocaine base, an offense for which the maximum term of imprisonment is twenty years. This offense triggers the rebuttable presumption of section 3142(e)(3)(A), which provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure [(1)] the appearance of the person as required and [(2)] the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for

6

which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142(e)(3)(A).

Once the rebuttable presumption is triggered, it "operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *See United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). As this Court has emphasized, "[w]hile the burden of production may not be heavy, the applicable cases all speak in terms of a defendant's obligation to introduce 'evidence.'" *United States v. Lee*, 195 F. Supp. 3d 120, 125 (D.D.C. July 1, 2016) (citations omitted). Thus, the defendant must offer not mere speculation, but "at least some evidence," or basis to conclude that the presumption has been rebutted in his or her case. *Stone*, 608 F.3d at 945–46; *Alatishe*, 768 F. 2d at 371; *see also United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). Specifically, a defendant "should 'present all the special features of his case' that take it outside 'the congressional paradigm'" giving rise to the presumption. *Stone*, 608 F.3d at 946 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Portes,* 786 F.2d 758, 764 (7th Cir. 1985) (presumptions in section 3142(e) "are 'rebutted' when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released").

That said, the burden of persuasion on the issue of detention remains, as always, with the government. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). But even where the defendant offers evidence to rebut the presumption, the presumption is not erased. It is "not a 'bursting bubble' that becomes devoid of all force once a defendant has met his burden of production." *Taylor*, 289 F. Supp. 3d at 63 (quoting *Jessup*, 757 F.2d at 382). Rather, even after the defendant carries his burden of production, the presumption "remains in the case as an

evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *Taylor*, 289 F. Supp. 3d at 63 ("[T]he judicial officer must 'keep in mind the fact that Congress has found that' those charged with the specified offenses are likely to pose a danger to the community." (quoting *Jessup*, 757 F.2d at 384)); *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011).

## ANALYSIS

A.  **Application of the Rebuttable Presumption**

Defendant concedes that the rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3)(A) applies here, but stresses that his strong ties to the community are sufficient to meet his burden of production to rebut it. Specifically, Defendant argues that he is a long-time resident of the D.C.-area, has lived at the Alabama Avenue address with his girlfriend for four years, and has been gainfully employed since his release from jail five years ago, most recently for a construction company working on the Washington Area Metropolitan Transit Authority's Silver Line project. He also notes that the amount of drugs found on him at his recent arrest was relatively small.

Having heard the parties' proffers, the Court finds that Defendant has rebutted the presumption that he is a flight risk. Defendant is a U.S. citizen who has lived in the area for more than two decades. He has ties to the community, including a girlfriend, and has a history of gainful employment. However, Defendant failed to produce at the hearing "some credible evidence contrary to the statutory presumption" of his dangerousness were he to be released. *Alatishe*, 768 F. 2d at 371.

Congress has determined that individuals who, like Defendant, have been charged with

drug offenses carrying a maximum term of imprisonment of ten years or more presumptively pose a danger to the community. *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (explaining that the presumption "represents Congress's general factual view about . . . the special risks of danger to the community presented by defendants who commit the crimes to which it attaches"). Here, Defendant's charges include not only drug trafficking, but also possession of a weapon in furtherance of that crime, as well as possession of a weapon by a convicted felon. "[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter." *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018). Defendant objects that the amount of cocaine recovered at his arrest was not large—the government estimates its street value at $400 to $500—but that rationalization ignores a few salient facts. First, the search of his home also uncovered paraphernalia associated with drug dealing, including material for packaging and weighing narcotics and crack-cooking equipment, that is, the Pyrex cup with white residue. Second, a mere two weeks prior to his arrest on these charges, he was found in possession of eighteen grams of crack. Third, the ATF investigation has connected him to the premises with the barbershop, where even more paraphernalia consistent with drug trafficking was found. Moreover, the weight of the evidence is strong that Defendant possessed the drugs, drug paraphernalia, gun, and ammunition. It was found by law enforcement at his home and he admitted that the gun, at least, was his. Finally, the probative value of Defendant's evidence concerning his ties to the community is limited because "this evidence would equally tend to suggest that Defendant would never have committed the crime with which he is now charged." *United States v. Bess*, 678 F. Supp. 929, 935

9

(D.D.C. 1988) ("The history and characteristics of Defendant—his family and community ties [and] his educational and employment record . . . did not deter him from committing armed robbery in the first instance . . . .").

### B. Application of the Section 3142(g) Factors

Had Defendant fully rebutted the presumption in favor of his detention, and the Court were to consider the Bail Reform Act's four section 3142(g) factors, the conclusion would ultimately be the same: Defendant should be held without bond pending trial. The four factors that must be considered in making a bond determination are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Further, where, as here, a rebuttable presumption applies, it "remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g)," even if the defendant has met his or her burden of production of offering some credible evidence to the contrary. *Dominguez*, 783 F.2d at 707; *Taylor*, 289 F. Supp. 3d at 63; *Ali*, 793 F. Supp. 2d at 391.

#### 1. *Nature and Circumstances of the Charged Offense*

The first factor, the nature and circumstances of the charged offense, favors detention. This factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter, but points especially to instances where "the offense is a crime of violence . . . or involves a controlled substance, firearm, explosive, or destructive device." 18 U.S.C. § 3142(g)(1). Here, the indictment and the government's proffer establish probable cause to believe Defendant engaged in a drug trafficking offense involving cocaine base. Defendant admitted to possessing a

10

firearm that he knew he was prohibited from possessing. Finally, the charge of possessing a firearm during a drug trafficking offense carries a mandatory minimum term of imprisonment of five years, 18 U.S.C. § 924(c)(1)(A)(i), reflecting Congress' judgment as to the seriousness of the offense. Therefore, the nature and circumstances of the offense weigh in favor of detention.

    2.    *The Weight of the Evidence*

The weight of the evidence against Defendant is strong and also favors detention. As outlined above, law enforcement recovered the drugs, drug trafficking paraphernalia, gun, and ammunition from Defendant's residence, and he admitted that the gun was his.

    3.    *The History and Characteristics of Defendant*

Section 3142(g)(3) directs the Court to consider: (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law. 18 U.S.C. § 3142(g)(3)(A)–(B).

Defendant has been convicted of a crime of violence—assault with a deadly weapon—in which a firearm was used. His current arrest, which also includes firearms charges, occurred while he was on pretrial release for a felony narcotics crime in Virginia and a misdemeanor charge for leaving the scene of a collision in the District of Columbia. The fact that he violated one of the most important conditions of his release—that he should not engage in other criminal activity—indicates that Defendant is unwilling to conform his conduct to the dictates of the law. For these

11

reasons, Defendant's history and characteristics militate in favor of detention.

        4.      *The Danger to the Community*

The fourth factor, the danger to the community posed by Defendant were he to be released, also weighs in favor of detention. The danger to the community posed by his possession of a weapon and drug dealing is discussed above and requires no further explanation here.

For these reasons, the Court does not have confidence that, if released, Defendant would not continue to engage in criminal activity. The undersigned therefore finds that there is no condition or combination of conditions that would keep the community safe if Defendant were released.

## CONCLUSION

Based on the consideration of all the evidence, the factors set forth in section 3142(g), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or of the community if Defendant was released. Therefore, the government's motion for pretrial detention is **GRANTED**.

## DIRECTIONS REGARDING DETENTION

Defendant is **ORDERED** remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant must be afforded reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility must deliver Defendant to a United States Marshal

for the purpose of an appearance in connection with a court proceeding.


Date: May 21, 2018  
                                                               G. MICHAEL HARVEY  
                                                               UNITED STATES MAGISTRATE JUDGE